IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER M. McDANNEL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:24-CV-00124-DGK ) |
| CITY OF GLADSTONE, et al., | ) ) |
| Defendants. | ) ) |

## ORDER GRANTING MOTION TO DISMISS

This lawsuit arises from a traffic stop in which Plaintiff Christopher McDannel was a passenger. During the stop, McDannel was placed in handcuffs and later taken to the ground after law enforcement officers attempted to place him in a police car and he resisted. McDannel alleges that after he had yielded, two officers held him down while a third knelt on his left arm, breaking it. The deputy who initiated the stop and placed Plaintiff in handcuffs was Defendant Clay County Deputy Keagon Reed ("Deputy Reed").

Now before the Court is Deputy Reed and Clay County, Missouri's Motion to Dismiss. ECF No. 34. Because the Amended Complaint fails to state a claim against these Defendants, the motion is GRANTED.

### Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (cleaned up). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

**Background**

Accepting the Amended Complaint's factual allegations as true, viewing these allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Court finds the facts to be as follows for purposes of resolving the pending motion.

Around 2:00 a.m. on July 20, 2022, Plaintiff was a passenger in a GMC Terrain driven by his sister, Sarah Nesfeder, when Deputy Reed made a traffic stop on the car for failure to use a turn signal. Deputy Reed ordered Ms. Nesfeder from the car so he could conduct a field sobriety test on her.

After Ms. Nesfeder was out of the car, Plaintiff asked to speak with her. Deputy Reed denied the request and warned Plaintiff that if he got out of the vehicle he would be arrested. Fearing for his safety because witnesses were not present, Plaintiff told Deputy Reed that he needed to call for additional officers to come to the scene.

Deputy Reed then radioed in that he had an "aggressive" passenger and asked for another unit to come to the scene. Plaintiff was not, in fact, being aggressive.

Plaintiff began yelling to his sister to refuse to perform the field sobriety tests and instead be arrested. While he was yelling to her, he remained in the vehicle with his hands in the air in front of him. Plaintiff did not step out of the car or reach for the car handle.

Deputy Reed then opened the passenger side door and ordered Plaintiff out of the car to be handcuffed. Plaintiff continued to "advise" his sister not to submit to the field sobriety tests and encouraged Deputy Reed to call for additional officers.

Within a minute of Plaintiff being handcuffed, Defendant Missouri Highway Patrol Trooper Chase Adkison ("Trooper Adkison") and Defendant Gladstone Police Department Corporal Joshua East ("Corporal East") arrived on the scene and took charge of Plaintiff. Speaking to Corporal East about what was happening, Deputy Reed misquoted Plaintiff as warning Deputy Reed that "you'd better get a bunch of friends here," insinuating Plaintiff intended violence. He also told Corporal East that Plaintiff was "an asshole." After Deputy Reed returned to the driver, he told her Plaintiff was "an asshole."

Despite Plaintiff yelling for his sister to refuse to perform the field sobriety tests, she performed them. Plaintiff then cursed at the police, saying "Fuck y'all."

Trooper Adkison and Corporal East then discussed putting Plaintiff in a "cage" (apparently a police car with a caged rear passenger seat), and then decided to put him in a police vehicle. They then walked Plaintiff to a police car, and Corporal East ordered him to sit in the vehicle. Plaintiff asked him to loosen his cuffs before sitting. Trooper Adkison, Corporal East, and another Gladstone Police Department officer who had arrived on the scene, Officer Lawlor Christiansen, then began pushing Plaintiff into the back of the patrol car. Corporal East struck Plaintiff while pushing him. Plaintiff said, "So you're going to hit me?" Corporal East replied, "Yeah, I'm going to hit you again."

Plaintiff apparently successfully resisted being placed in the police car. The officers then threw Plaintiff to the ground, still handcuffed. Plaintiff then yielded, saying, "Ok, ok, ok, I'm good." Five second later, Corporal East knelt on Plaintiff's left arm, breaking it, while Trooper Adkison and Officer Christiansen held Plaintiff down. While lying on the ground, Plaintiff began screaming in pain. The officers then moved him into a seated position. While sitting on the ground, Plaintiff repeatedly asked if he was under arrest, cursed the officers, and asked to have the handcuffs removed. Deputy Reed told Plaintiff he was detained and refused to take his cuffs off.

The handcuffs were not taken off until after Plaintiff was taken to Liberty Hospital for treatment. Deputy Reed later appeared at the hospital and cited Plaintiff for resisting/interfering with an arrest, detention, or stop.

On February 23, 2024, Plaintiff filed this lawsuit. The Amended Complaint,[1] ECF No. 19, asserts six counts, three of which apply to these Defendants. Count II is a claim brought under Missouri law against Deputy Reed and the other three officers for false arrest. Count IV is brought against Clay County, Missouri, for failure to instruct, supervise, or control Deputy Reed. Count V is brought under 42 U.S.C. § 1983 against Deputy Reed and the other three officers for violating Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech.

## Discussion

Defendants Clay County and Deputy Reed argue for dismissal of Counts II, IV, and V against them.

**I.    The motion is granted with respect to Count II against Deputy Reed.**

With respect to the false arrest claim (Count II), Deputy Reed argues he is entitled to official immunity under Missouri law. He notes that the decision to arrest a suspect is a discretionary act

---

[1] The Amended Complaint is captioned "Petition for Damages." In Missouri state court, a pleading is called a petition; in federal court, it is called a complaint. The Court will refer to it as "the Amended Complaint."

which is protected by official immunity under Missouri law unless the officer was acting in bad faith or malice, neither of which he argues is present here.

Plaintiff argues that malice[2] can be reasonably inferred from the fact that Deputy Reed: (1) called for backup; (2) characterized Plaintiff as "aggressive" when calling for backup; (3) misstated to the dispatcher what Plaintiff actually said, falsely telling the dispatcher Plaintiff said, "You'd better get a bunch of friends here;" (4) telling Plaintiff's sister he was an "asshole;" and (5) refusing to take the handcuffs off after his arm had been broken. Opp'n at 7–8, ECF No. 39.

The Court holds the Amended Complaint's allegations are not enough to overcome official immunity. Under Missouri law, "malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'" *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986). "Acting with malice requires an *actual intent* to cause injury." *Id*. (emphasis added). Further, evidence of bad-faith or malice must be considered in the context of the entire situation. *Id*.

Considered in context, the allegations here do not support an inference that Deputy Reed was acting out of malice. Deputy Reed calling for backup does not suggest malice because Plaintiff *asked* Deputy Reed to call more officers to the scene. Nor does Deputy Reed reporting to Corporal East that Plaintiff said to him "You'd better get a bunch of friends here," when what Plaintiff actually said was he "needed to call for additional officers," indicate malice. While Deputy Reed misquoted Plaintiff, and the tone of what Deputy Reed reported he said was worse, the meaning of the two phrases is not significantly different. A reasonable person would still be concerned and wonder why Plaintiff had told Deputy Reed that he "needed to call for additional officers." A

---

[2] Plaintiff does not argue bad faith.

reasonable inference is that Plaintiff knew something bad was going to happen and more officers would be needed.

As for describing Plaintiff as "aggressive" to the police dispatcher, given the circumstances of the stop—it occurred at 2:00 a.m. while Deputy Reed was alone with two individuals—Plaintiff telling Deputy Reed that "he needed to call for additional officers" could fairly be described as menacing, or at the very least unsettling. While describing Plaintiff's behavior as vaguely threatening might have been more accurate, aggressive is not an unfair description. In any event, Deputy Reed's failure to use a better adverb in the situation does not suggest malice. Further, while twice calling Plaintiff an "asshole" was unprofessional and proves Deputy Reed did not like Plaintiff, it does not indicate Deputy Reed felt such hostility or animus towards him that a reasonable person could infer Deputy Reed wanted to physically hurt him. The Court also notes that Deputy Reed had nothing to do with taking Plaintiff to the ground or breaking his arm.

Finally, Deputy Reed's declining to take the handcuffs off after Plaintiff's arm was broken might seem harsh in retrospect, but considering all the facts and circumstances known at the time, it does not indicate malice. There is no allegation here that Deputy Reed even realized Plaintiff's arm was broken when he refused to take the handcuffs off. Even if he did know, however, it would not make much difference in the analysis. When Deputy Reed refused to take the handcuffs off, Plaintiff had already refused to comply with the officers' instructions and had successfully used force to resist attempts to place him in the back of a patrol car. And while sitting on the ground, he was still cursing the officers. Thus, Deputy Reed had good cause to keep Plaintiff in handcuffs because he was angry and had demonstrated he could not be trusted to follow officer's instructions. Granted, it would be more difficult for Plaintiff to resist officers a second time with a broken arm, but individuals in custody occasionally do angry, desperate, irrational things, and Deputy Reed had the safety of the other officers, Plaintiff, and Ms. Nesfeder to consider when deciding whether to

6

Case 4:24-cv-00124-DGK    Document 60    Filed 09/13/24    Page 6 of 12

remove the handcuffs. Hence, Deputy Reed's decision demonstrates prudence more than it does a wrongful motive.

Of course, Deputy Reed could have taken a different approach here and uncuffed Plaintiff after other officers arrived at the scene, or uncuffed him after he had been injured. Perhaps doing so would have achieved a more desirable outcome, or perhaps it would have resulted in police officers being injured instead of, or in addition to, Plaintiff. Who knows? The question is not whether this situation could have been handled differently, but whether under Missouri law Deputy Reed is entitled to official immunity. He is. *See Harris v. Presson*, 445 S.W.3d 127, 129 (Mo. Ct. App. 2014) ("[Official immunity] was established to protect officers from second-guessing based on hindsight."); *see also State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 194 (Mo. 2019) ("[Q]uick judgment calls are exactly the types of decisions official immunity was established to protect public officials from . . . . even though hindsight may demonstrate errors in judgment which might be branded as negligent by qualified evaluators.").

**II.     The motion is granted with respect to Count V against Deputy Reed.**

Deputy Reed also moves for dismissal on Count V, the First Amendment retaliation claim. This claim alleges Deputy Reed detained Plaintiff, and later arrested him, in retaliation for his exercising his First Amendment rights by yelling for his sister not to submit to a field sobriety test.

To prevail on a First Amendment retaliation claim, a plaintiff must plead, and eventually prove, two things: (1) the absence of reasonable suspicion for detainment or probable cause for an arrest, and (2) that "retaliation was a substantial or motivating factor behind the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019). With respect to the second factor, the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399. "[A]ction colored by some degree of bad motive

does not amount to a constitutional tort if that action would have been taken anyway." *Harman v. Moore*, 547 U.S. 250, 260 (2006).

### A. Deputy Reed is entitled to qualified immunity because Plaintiff failed to sufficiently plead Deputy Reed violated a constitutional right.

Deputy Reed argues he is entitled to qualified immunity on this claim. Suggestions in Supp. at 4–5, ECF No. 35. Qualified immunity shields public officials from liability for civil damages in federal civil rights cases if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 951 (8th Cir. 2024). Because qualified immunity is an affirmative defense, it can be upheld at the motion to dismiss stage only when the immunity is established on the face of the complaint. *Id*. To overcome qualified immunity at this stage, the plaintiff need only plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time. *Id*.

Deputy Reed argues "Plaintiff has not met his burden under the first prong of the qualified immunity analysis because he has not adequately alleged a violation of his First Amendment rights" because this was a valid *Terry* stop. Suggestions in Supp. at 5. With respect to the second prong in the immunity analysis, Deputy Reed contends Plaintiff cannot demonstrate a violation of a clearly established right because there was at least an arguable basis to place Plaintiff in the patrol car as part of a *Terry* stop, and the Eighth Circuit has held that where an officer has at least arguable reasonable suspicion, qualified immunity bars the claim. *Id*. at 8.

Plaintiff responds that qualified immunity does not apply here. He contends keeping him in handcuffs was unreasonable after Corporal East and Trooper Atkison arrived, and by keeping him in handcuffs, Deputy Reed escalated a *Terry* stop into an arrest that lacked probable cause. Opp'n at 6 ("Plaintiff was under arrest from the moment Corporal East and Trooper Adkison

arrived on the scene."). Plaintiff does not respond to Deputy Reed's assertion that he had at least an arguable basis to place him in the police car.

The Court first considers whether the Amended Complaint sufficiently pleads facts showing Deputy Reed violated a constitutional right.

Plaintiff's claim that he was arrested without probable cause is unavailing. Plaintiff's argument rests on the claim that he was de facto arrested once the other officers arrived on the scene and he remained in handcuffs. But Plaintiff cites no analogous caselaw supporting this proposition, and the most recent, more analogous Eighth Circuit caselaw indicates this was a valid *Terry* stop. *See Waters v. Madson*, 921 F.3d 725, 737 (8th Cir. 2019) (holding no de facto arrest occurred despite the suspect being placed in handcuffs and placed in the back of a patrol car for twenty minutes because, when viewed as a whole, the suspect's "unpredictability, evasiveness, argumentative demeanor, refusal to []obey legitimate officer commands, and the size difference" between the suspect and the officers, caused the officers to reasonably believe this was necessary to preserve the status quo); *see also United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011) ("We have repeatedly held that police officers may reasonably handcuff a suspect and place him in a squad car during the course of a *Terry* stop in order to protect their safety and maintain the status quo.").

The Court holds that as in *Waters*, given the totality of the circumstances, Deputy Reed reasonably believed that keeping Plaintiff in handcuffs and temporarily placing him in the back of a police car was the least intrusive means of maintaining the status quo. Granted, Deputy Reed was no longer alone once Corporal East and Trooper Atkison arrived, but Ms. Nesfeder was still present and needed to be field tested, Plaintiff continued to yell and curse, and Plaintiff had previously warned Deputy Reed that he would need additional officers on the scene—intimating he might do something. These facts were enough to make a reasonable officer believe the situation

was sufficiently combustible that to ensure everyone's safety Plaintiff should remain handcuffed and temporarily placed in the back of a police car. Thus, Deputy Reed's decisions were actions taken pursuant to a *Terry* stop and not a de facto arrest.

Plaintiff's citation to *United States v. Childers*, 73 F.4th 960 (8th Cir. 2023) for support is unavailing. In *Childers* officers suspected three individuals in a car of recklessly discharging firearms in a city park. *Id*. at 962. After approaching them with guns drawn pursuant to the protocol for a high-risk felony stop, the officers ordered the suspects out of the car one by one, handcuffed them, and then placed them in separate vehicles. *Id*. at 962-63. Seven police officers responded to the scene in three different vehicles. *Id*. at 964. In analyzing whether a *Terry* stop had been transformed into a de facto arrest without probable cause, the court identified and applied "five principal factors" to the situation. *Id*. at 963 (emphasis added). These factors were

> (1) the number of officers and police cars involved; (2) the nature of the crime and whether there is reason to believe the suspect might be armed; (3) the strength of the officers' articulable, objective suspicions; (4) the erratic behavior of or suspicious movements by the persons under observation; and (5) the need for immediate action by the officers and lack of opportunity for them to have made the stop in less threatening circumstances.

*Id*. After finding all five factors applied, the *Childers* court found the defendant had not been subject to a de facto arrest. *Id*. Plaintiff suggests that since these five factors are not present in this case (e.g., the police did not suspect either Plaintiff or his sister of being armed), there must have been a de facto arrest. Opp'n at 6.

This argument misreads *Childers* for a least two reasons. First, Plaintiff suggests *Childers* set a floor or bare minimum of facts that must be present to keep a *Terry* stop from transforming into a de facto arrest. But nothing in *Childers* suggests this. Second, although *Childers* set out five factors that are frequently present in cases involving *Terry* stops where suspects are

handcuffed and placed in police cars, nothing in it states this is an exclusive list of factors courts may consider. While these factors are often helpful in deciding the ultimate question, it is long-established that the ultimate question is whether given all the facts and circumstances the officer reasonably believed handcuffing the suspect and placing him in a squad car was necessary to protect safety and maintain the status quo. *See U.S. v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) ("[A]s part of a lawful Terry stop, officers may take measures that are 'reasonably necessary to protect their safety and to maintain the status quo during the course of the stop.'") (quoting *U.S. v. Hensley*, 469 U.S. 221, 235 (1985)).

Because the Amended Complaint does not plead facts overcoming Deputy Reed's qualified immunity with respect to the First Amendment retaliation claim, Count V must be dismissed against him.

**B.      Alternately, Deputy Reed is entitled to qualified immunity on Count V because he arguably had a reasonable belief that his actions were necessary to protect everyone's safety and maintain the status quo.**

Arguing in the alternative, Deputy Reed contends he is entitled to qualified immunity because he had at least an arguable belief that handcuffing Plaintiff and placing him in the back of a police car was reasonably necessary under the circumstances. He notes the Eighth Circuit has held that where an officer has at least arguable basis to detain a suspect pursuant to a Terry stop, qualified immunity bars the claim. *See Waters*, 921 F.3d 736–37.

Plaintiff does not respond to this claim, so it waived. "A party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues." *Tate v. Scheidt*, No. 15-3115 (WMW/JSM), 2016 WL 7155806, at *6 (D. Minn. Oct. 7, 2016); *see Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

Although the Court does not need to address this argument because it has already held the *Terry* stop did not escalate into a de facto arrest and Plaintiff has waived any opposition to it, to aid in any appellate review, the Court will do so. The Court holds that even if the Terry stop had escalated into an unlawful, de facto arrest, Deputy Reed at least had an arguable basis to reasonably believe that handcuffing Plaintiff and placing him in the back of the police car were necessary to protect officer safety and preserve the status quo during the stop. Hence, he is entitled to qualified immunity on this alternate basis.

**III.  The motion is granted with respect to Count IV against Clay County.**

Defendant Clay County argues Count IV is a *Monell* claim premised on a respondeat superior theory of liability that an official custom or practice of the Clay County Sheriff's Office caused Deputy Reed to violate Plaintiff's rights. Therefore, if Plaintiff cannot establish a constitutional violation by Deputy Reed, it cannot establish a claim against Clay County.

In response, Plaintiff argues that "[g]iven the relatively early stage of the case, and the fact that this is a Rule 12(b)(6) motion, rendering a decision on Defendants' *Monell* defense is premature." Opp'n at 8.

Plaintiff's argument is unavailing. Since he has not stated a claim against Deputy Reed, he cannot maintain one against Clay County.

Count IV is dismissed against Clay County.

### Conclusion

For the reasons discussed above, the motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

Date:   September 13, 2024            /s/ Greg Kays
                                      GREG KAYS, JUDGE
                                      UNITED STATES DISTRICT COURT